UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREENWICH FINANCIAL SERVICES DISTRESSED MORTGAGE FUND 3, LLC, and QED LLC, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC. and COUNTRYWIDE HOME LOANS SERVICING LP,<br><br>Defendants. | Case No.: 08 CV 11343(RJH)(KNF)<br>ECF MATTER<br><br><br>AMENDED NOTICE OF REMOVAL |

TO:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT
       COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

PLEASE TAKE NOTICE that Defendants COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., and COUNTRYWIDE HOME LOANS SERVICING LP (collectively "Countrywide" or "Defendants"), through their undersigned counsel, respectfully submit this amended Notice of Removal of the above-captioned action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York in accordance with 28 U.S.C. §§ 1441, 1446, and 1453 based on the following:

### SUMMARY OF THE FACTS

1.    On December 1, 2008, plaintiffs filed this action in the Supreme Court of the State of New York, County of New York. It was assigned Index No. 650474/2008. In accordance with 28 U.S.C. § 1446(a), a copy of the Summons, Complaint, and all other documents served on Countrywide are attached as Exhibit A.

2. Countrywide Home Loans, Inc. was served by personal delivery on December 10, 2008. Countrywide Home Loans Servicing LP was served by mail on December 9, 2008. Countrywide Financial Corporation was served by mail on December 9, 2008. All defendants consent to and join in this amended notice of removal.

3. On December 30, 2008, Countrywide timely filed a Notice of Removal removing plaintiffs' action to this Court. Countrywide asserted that removal was proper under (1) the Class Action Fairness Act, see 28 U.S.C. §§ 1332(d) & 1453; (2) Federal Question Jurisdiction, see 28 U.S.C. § 1331, because plaintiffs' suit necessitates the adjudication of a substantial, disputed question of federal law governed by 15 U.S.C. § 1639a; and (3) Supplemental Jurisdiction, see 28 U.S.C. § 1367. See Notice of Removal ¶¶ 5-7.

4. On May 20, 2009 President Obama signed into law the Helping Families Save Their Homes Act of 2009 (the "Homes Act"), Pub. L. No. 111-22, 123 Stat. 1632 (2009), a statute that amends 15 U.S.C. § 1639a to modify the uniform federal standards that govern a mortgage servicer's duty to mortgage investors, and to immunize servicers from any damages or equitable relief related to qualified loss-mitigation modifications.

5. This Amended Notice of Removal is timely under 28 U.S.C. § 1446(b) and 28 U.S.C. § 1653 because it amends a Notice of Removal that was filed no later than 30 days after the effective date of service. Additionally, the Amended Notice of Removal is timely under 28 U.S.C. § 1446(b) because it was filed within 30 days of the Homes Act's enactment.

6. In accordance with 28 U.S.C. § 1446(d), Countrywide will promptly file a copy of this Amended Notice of Removal with the clerk of the Supreme Court of New York, County of New York, and will serve a copy of the same upon counsel for plaintiffs.

## BASES FOR REMOVAL JURISDICTION

7. <u>Class Action Fairness Act.</u> The claims asserted against Countrywide in this action are removable under the Class Action Fairness Act of 2005. This is a minimally diverse putative class action. It is brought on behalf of more than 100 represented plaintiffs, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest. *See* 28 U.S.C. §§ 1332(d) & 1453.

8. <u>Substantial federal question.</u> This Court has original jurisdiction over Count I of plaintiffs' Complaint under 28 U.S.C. § 1331, and it may be removed to this Court by Countrywide under 28 U.S.C. § 1441(b), because plaintiffs assert a claim in Count I that will necessitate the adjudication of a substantial, disputed question of federal law.

9. <u>Supplemental jurisdiction.</u> This Court has supplemental jurisdiction over Count II of the Complaint because it is so related to Count I, which is within this Court's original jurisdiction, that it forms part of the same case or controversy under Article III of the United States Constitution. *See* 28 U.S.C. § 1367.

## REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

10. This Court has original diversity jurisdiction under 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005 ("CAFA").

11. CAFA was enacted to extend federal jurisdiction over interstate class actions. *See* 28 U.S.C. §§ 1332(d) & 1453; *Brook v. UnitedHealth Group Inc.*, No. 06-CV-12954(GBD), 2007 WL 2827808, at *2 (S.D.N.Y. Sept. 27, 2007). This case satisfies all of the requirements for federal jurisdiction under CAFA.

12. First, this case was filed as a proposed class action. Plaintiffs bring this suit as a class action under New York Civil Practice Law and Rules Article 9, Section 901, which is the New York rule of civil procedure authorizing class actions. (Compl. ¶ 12.)

3

13.  Second, the diversity of citizenship requirement is met. Jurisdiction under CAFA is proper so long as minimal diversity exists. *See* 28 U.S.C. § 1332(d)(2)(A). Minimal diversity exists in this case. The Complaint correctly alleges that: (1) Defendant Countrywide Home Loans, Inc. is a corporation organized under the laws of New York with its principal place of business in California; (2) Defendant Countrywide Home Loans Servicing LP is a limited partnership organized under the laws of Texas with its principal place of business in Texas; (3) Defendant Countrywide Financial Corporation is a corporation organized under the laws of Delaware with its principal place of business in California; (4) plaintiffs Greenwich Financial Services and QED LLC have their principal places of business in Connecticut and are each organized under the laws of Delaware. In addition, the named plaintiffs seek relief regarding 374 different mortgage securitizations, whose holders in all likelihood reside in many if not most of the States. Because one or more of the Defendants is diverse from one or more of the plaintiffs, the parties satisfy CAFA's minimal diversity requirement.

14.  Third, as required for CAFA jurisdiction, the proposed class has more than 100 members. *See* 28 U.S.C. § 1332(d)(5)(B). Plaintiffs seek relief on behalf of the holders of 374 securitizations. Each of these securitizations issues numerous securities certificates. As plaintiffs allege in their Complaint, the holders of these securitizations likely number in the thousands. (Compl. ¶ 13.)

15.  Fourth, CAFA's amount-in-controversy requirement is met. CAFA jurisdiction exists where the aggregate amount in controversy in a proposed class action exceeds $5 million. *See* 28 U.S.C. §§ 1332(d)(2) & (d)(6).

16.  In passing CAFA, Congress made clear that the amount in controversy was satisfied "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of

4

the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." S. Rep. No. 109-14 at 42 (2005) *reprinted in* 2005 U.S.C.C.A.N. 4, 40; *see also* 151 Cong. Rec. H 723, H727-28 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner). Congress also noted that

> in assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants. For example, a declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000. Or a declaration that a standardized product sold throughout the nation is 'defective' might well put a case over the $5,000,000 threshold, even if the class complaint did not affirmatively seek a determination that each class member was injured by the product.

S. Rep. No. 109-14 at 43 (2005) *reprinted in* 2005 U.S.C.C.A.N. 4, 41; *see also* 151 Cong. Rec. H 723, H730 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner).

17.     The aggregate amount in controversy requirement is satisfied here. Plaintiffs seek "a declaration that . . . Countrywide is required to purchase any loan [held by the putative class members] on which [Countrywide] agrees to reduce payments." (Compl. ¶ 3.) They also seek a declaration that Countrywide is required to repurchase any modified loan at an amount not less than the unpaid principal of the loan plus any accrued but unpaid interest. (Compl. ¶ 38.)

18.     Plaintiffs expressly allege that the value of the relief sought is measured in the billions of dollars—well in excess of the $5 million jurisdictional minimum. Plaintiffs claim that "depending on the resolution of the questions on which they seek a declaratory judgment, the value of all certificates held by members of the plaintiff class will be affected by ***billions*** of dollars." (Compl. ¶ 32) (emphasis added) Plaintiffs' counsel also has stated publicly that "if the

5

court grants the declaration we seek in this complaint, then Countrywide (and its parent Bank of America) would be liable to pay the trusts approximately $80 billion for the loans it modifies." Rachel Breitman, *Class Action Demands Countrywide Repay Hedge Fund for Losses*, The Am Law Daily Blog, December 3, 2008 (attached as Exhibit B).

19. As alleged in the Complaint, on October 6, 2008, Countrywide announced a nationwide home ownership retention initiative under which it intends, in the interests of, among others, investors, to modify hundreds of thousands of defaulted mortgage loans—an initiative memorialized in agreements with several state attorneys general. (Declaration of Bill Endicott in Support of Defendants' Notice of Removal ("Endicott Decl.") ¶ 4 (attached as Exhibit C.) Even before then, Countrywide already had exercised its authority to modify mortgage loans in the 374 CWL and CWALT securitizations identified in plaintiffs' Complaint, with aggregate unpaid principal balances exceeding $5 million. (*Id.* ¶ 3.)

20. Moreover, following its October 6, 2008 announcement of the nationwide home ownership retention initiative, Countrywide has already commenced modification of additional mortgage loans in the 374 CWL and CWALT securitizations identified in plaintiffs' Complaint whose aggregated value of unpaid principal exceeds $5 million. (*Id.* ¶ 5.) Ultimately, the nationwide home ownership retention initiative may ultimately result in the modification of mortgage loans having an aggregate unpaid balance of more than $91 billion. (*Id.* ¶ 6.) For example, the outstanding aggregate value of the unpaid principal on the loans in just two states with which Countrywide has memorialized an agreement, California and Illinois (Compl. ¶ 29; Compl. Exs. C and D), is more than $42 billion. (Endicott Decl. ¶ 6.) Accordingly, the relief that would logically flow from plaintiffs' proposed declaration places more than $5 million in controversy.

21. "[O]nce CAFA jurisdiction is established, the burden of proof to establish the existence of an exception rests with the party objecting to the court's exercise of jurisdiction." *Brook*, 2007 WL 2827808, at *3. Defendants nevertheless submit that this case presents no exception to the exercise of federal jurisdiction under CAFA.

22. Because this is a class action in which minimal diversity exists, there are more than 100 putative class members, and the case satisfies CAFA's $5 million aggregate amount in controversy requirement, CAFA confers original jurisdiction upon this court under 28 U.S.C. § 1332(d). Removal is therefore appropriate under 28 U.S.C. §§ 1441(a) and 1453.

## SUBSTANTIAL FEDERAL QUESTION

23. This Court independently has federal question jurisdiction over this action under 28 U.S.C. § 1331. Federal question jurisdiction under § 1331 exists when, among other things, a state-law claim in a plaintiff's complaint requires the court to resolve a disputed, substantial question of federal law. *See Grable & Sons Metal Products v. Daure Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (affirming federal question jurisdiction over state quiet-title action based on need to resolve predicate issue under federal Internal Revenue Code).

24. As Countrywide explained in its original Notice of Removal, plaintiffs' claims in this case require the Court to construe the relevant Pooling and Servicing Agreements to determine what duties are owed by Countrywide to investors—duties that are defined by, or must be interpreted as consistent with, federal law. That law was and remains set forth in 15 U.S.C. § 1639a, pre- and post-amendment.

25. The Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, as modified by the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. 110-289 (July 30, 2008), provided in the prior version of 15 U.S.C. § 1639a a safe harbor for servicers of pooled

7

residential mortgages who modify certain loans. The Homes Act of 2009 amends 15 U.S.C. § 1639a to modify (1) the uniform federal standards that govern a mortgage servicer's duty to mortgage investors, and (2) the safe harbor that immunizes servicers from any damages or equitable relief related to qualified loss-mitigation modifications.

26.     The prior version of 15 U.S.C. § 1639a set forth the standard for determining whether Countrywide "maximize[d] the net present value" of pooled mortgage securities by implementing modifications, workout plans, or re-financings for the mortgages. *See* 15 U.S.C. §§ 1639a(a)(1) & (2) (2008). The statute provided that servicers of pooled mortgages who modify the mortgages are, under certain circumstances satisfied here, deemed by federal law to be "act[ing] in the best interests" of investors in the pooled mortgages securities. *Id.* Congress enacted this safe-harbor provision, in part, because it is "a win for the investors—who might not get paid what was originally expected, but who will get paid because the homeowner, with a restructured mortgage, will be making payments they can afford." 154 Cong. Rec. H 6854, 7000 (daily ed. July 23, 2008) (statement of Rep. Hinojosa).

27.     The amended 15 U.S.C. § 1639a modifies the servicing standard set forth in the previous version of the statute by providing that, under similar circumstances satisfied here, "whenever a servicer of residential mortgages agrees to enter into a qualified loss mitigation plan with respect to 1 or more residential mortgages originated before the date of enactment of" the Homes Act, the "servicer shall be deemed to have satisfied [any] duty" to investors to maximize the net present value of such mortgages. Homes Act § 201(b) (TILA Sec. 129(a)(2)(A)-(C)).

28.     The amended 15 U.S.C. § 1639a further provides that implementation of a qualified loss mitigation plan "shall constitute standard industry practice for purposes of all Federal and State laws." Homes Act § 201(b) (TILA Sec. 129(c)).

29. Additionally, the amended 15 U.S.C. § 1639a provides that a servicer (1) "*shall* not be liable to any party who is owed a duty under [a provision of the statute governing duties to investors]," and (2) "*shall* not be subject to any injunction, stay, or other equitable relief to such party, based solely upon the implementation by the servicer of a qualified loss mitigation plan." *Id.* § 201(b) (Sec. 129(b)) (emphasis added). That immunity also extends to "[a]ny person, including a trustee, issuer, and loan originator" for its "cooperation ... with a servicer" where "necessary for the servicer to implement a qualified loss mitigation plan." *Id.* § 201(b) (TILA Sec. 129(d)).

30. HERA and TILA, both pre- and post-amendment, create federal question jurisdiction here because federal law will supply a rule of construction for interpreting the relevant Pooling and Servicing Agreements, and in determining whether Countrywide has breached those Agreements (and exceeded the bounds of its authority as a prudent servicer) by modifying defaulted loans to maximize returns for investors. As explained in Countrywide's original Notice of Removal, implicit in plaintiffs' interpretation of the Pooling and Servicing Agreements is the contention that Countrywide may never modify a mortgage loan for loss mitigation purposes to maximize returns to investors; rather, under plaintiffs' interpretation, the only way investor losses may be mitigated is if a servicer voluntarily purchases an underperforming mortgage and makes the investors' loss its own. To determine the merits of plaintiffs' allegation that the applicable Pooling and Servicing Agreements contain a duty to purchase every modified mortgage—an interpretation of the agreements that contradicts the original 15 U.S.C. § 1639a's safe harbor, the amended 15 U.S.C. § 1639a's safe harbor, and the amended 15 U.S.C. § 1639a's definition of "standard industry practice"—the Court must assess substantial and disputed questions of federal law.

31.  In addition, HERA and TILA were created and amended to establish national standards for the conduct of mortgage servicers like Countrywide. In the Homes Act, Congress expressly found that "[i]ncreasing numbers of mortgage foreclosures" are "destabilizing property values and negatively affecting ... the national economy," thus requiring a federal response. Homes Act § 201(a)(1). There is thus a significant federal interest in the adjudication of these claims in a federal forum. *Grable*, 545 U.S. at 314. The exercise of federal question jurisdiction here will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Id.*

32.  Because plaintiffs' claim for declaratory judgment in Count I is inextricably intertwined with substantial, disputed issues of federal law which the Court must eventually address, this Court has federal question jurisdiction over the claim under 28 U.S.C. § 1331.

## SUPPLEMENTAL JURISDICTION

33.  This Court also has supplemental jurisdiction over Count II of the Complaint. Under 28 U.S.C. § 1367(a), the Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

34.  As explained above the Court has original jurisdiction over Count I of the Complaint because it requires the Court to resolve a substantial question of federal law. Consequently, the Court also has supplemental jurisdiction over Count II, which seeks a declaratory judgment establishing the purchase price of every modified loan. The allegations and claim for relief set forth in Count II are intimately tied to the allegations and claim for relief in Count I, which seeks a declaratory judgment that Countrywide Home Loans, Inc. or Countrywide Home Loans Servicing LP must purchase the modified loans.

35. Because Count II of the Complaint is so related to Count I that it forms part of the same case or controversy under Article III of the United States Constitution, this Court has supplemental jurisdiction over Count II under 28 U.S.C. § 1367.

Dated: New York, New York  
        June 12, 2009

Respectfully submitted:

O'MELVENY & MYERS LLP

_____  
William J. Sushon  
7 Times Square  
New York, New York 10036  
(212) 326-2000  
wsushon@omm.com

*Counsel for Countrywide Financial Corporation, Countrywide Home Loans, Inc., and Countrywide Home Loans Servicing LP*

## CERTIFICATE OF SERVICE

I, Kenneth T. Murata hereby certify that a copy of the Amended Notice of Removal was served this date, June 12, 2009, by overnight courier upon the following counsel of record:

David J. Grais, Esq.
J. Bruce Boisture, Esq.
Owen L. Cyrulnik, Esq.
GRAIS & ELLSWORTH LLP
70 East 55th Street
New York, New York 10022

*Counsel for Plaintiffs Greenwich
Financial Services Distressed
Mortgage Fund 3, LLC, and QED LLC*

_____
Kenneth T. Murata

NY1:1782421.2